UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSE N. FUERTES,                                    :

                     Petitioner,              :     **MEMORANDUM DECISION**

            - v -                          :     19-CV-03401 (DC)

KATHLEEN GERBING, Superintendent of     :
the Otisville Correctional Facility,

                           :

                    Respondent.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        JOSE N. FUERTES
                           Petitioner *Pro Se*
                           DIN 12A0122
                           Otisville Correctional Facility
                           P.O. Box 8
                           Otisville, NY  10963-0008

                           ANNE T. DONNELLY, Esq.
                           District Attorney
                           Nassau County
                           By:     Andrea M. DiGregorio, Esq.
                                   Assistant District Attorney
                           262 Old Country Road
                           Mineola, NY  11501
                                   Attorney for Respondent

CHIN, Circuit Judge:

           On August 5, 2011, in the Supreme Court of the State of New York,

Nassau County (Kase, *J.*), petitioner Jose N. Fuertes was convicted, on a guilty plea, of

two counts of first-degree robbery, one count of second-degree robbery, two counts of

first-degree burglary, and one count of fourth-degree conspiracy.  *See* Dkt. 6-22.  The

Appellate Division, Second Department, thereafter vacated Fuertes's plea on the ground

that it was not "knowing, voluntary, and intelligent" and remitted the case for further

proceedings.  *People v. Fuertes*, 962 N.Y.S.2d 916 (2d Dep't 2013) ("*Fuertes I*").  Fuertes

pled guilty, again, to the same counts on June 5, 2014, and was later sentenced to

thirteen years' imprisonment and five years' post-release supervision.  *See* Dkt. 6-47 at 2.

The Appellate Division, Second Department, affirmed his conviction, *People v. Fuertes*,

70 N.Y.S.3d 393 (2d Dep't 2018) ("*Fuertes II*"), and the New York Court of Appeals

denied leave to appeal, *People v. Fuertes*, 106 N.E.3d 759 (N.Y. 2018) (Rivera, J.) ("*Fuertes

III*").

On June 5, 2019, Fuertes petitioned this Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 1.  The Nassau County District

Attorney's Office opposed the Petition on August 30, 2019, and Fuertes replied on

October 28, 2019.  *See* Dkts. 5, 9.  On May 9, 2023, the case was reassigned to the

undersigned.  For the reasons set forth below, Fuertes's Petition is DENIED.

## BACKGROUND

### I.  The Facts

At approximately 1:00 p.m. on November 19, 2010, two vehicles

containing six men drove up to a home at 54 Orchard Drive, Woodbury, New York.  *See*

Dkt. 6-41 at 289.  Randolph Chase, posing as a flower deliveryman, exited one of the

vehicles, approached the front door, and rang the doorbell. Dkt. 6-30 at 40. When one of the residents answered the door, Chase forced his way into the home at gunpoint, followed by Glen Campbell, Michael Mohammed, and Fuertes, who was also armed. *Id.* at 23-24, 54. Aadam Yusuf and Goutam Persaud waited in the getaway car. *Id.* at 54. Once inside, Fuertes and his accomplices stole jewelry and money, and then fled out the back door of the residence when the Nassau County police arrived. *Id.* at 25. The home's video surveillance system recorded the burglary, which the police reviewed. *Id.*

Within hours, the police apprehended all accomplices, except for Fuertes. *See* Dkt. 6-34 at 30. Mohammed, Campbell, and Persaud provided statements to the police that same day, implicating themselves in the crime, and each identified an individual named "Nick" as their sixth accomplice. *Id.* Mohammed told Officer Eric Byrom that he did not know Nick's real name. *Id.* at 31. Persaud identified Nick as "Jose Fuertes" to Detective Kevin McCarthy, but he provided no spelling for that name or other information about him. *Id.* at 32. After conducting several database searches using alternative spellings, Detective Byrom found Fuertes's name, address, and mugshot. *Id.* at 30. Detective Byrom then showed Mohammed a photo array containing Fuertes's mugshot and photos of five other individuals. *Id.* at 33. Mohammed immediately identified Fuertes's photo as "Nick," noting that his current hairstyle was "not the same" as the one depicted in the array. *Id.*

At approximately 1:30 a.m., police officers arrived, without a warrant, at the address associated with Fuertes in the police database -- 127-07 103rd Street in South Jamaica, Queens.  *See* Dkt. 6-31 at 6-7.  During a brief conversation at her front door, Fuertes's grandmother informed the officers that Fuertes was not there, that he lived with her "on and off," and that he had sought hospital treatment earlier that day after injuring his knee.  *Id.* at 7-8.  The officers thereafter visited two nearby hospitals, at one of which they ultimately obtained a Brooklyn address for Fuertes.  *Id.* at 9.

Officers arrived at approximately 3:00 a.m. at 224 Crystal Avenue in Brooklyn.  *Id.* at 10.  Fuertes's wife at the time, Nacica Gibbons, answered the officers' knock on the front door.  Gibbons agreed to let the officers enter the apartment to speak with Fuertes.  Officer Rafael Morales recognized Fuertes from the mugshot and placed him under arrest.  The officers seized as evidence damp clothing and sneakers lying on the apartment floor, which Fuertes confirmed he had worn the day before.  After Fuertes had been transported to the Second Precinct, Gibbons consented to a search of the apartment, although no additional items were seized.  *Id.* at 11-19.

At the Second Precinct, at 7:15 a.m., Fuertes signed a "*Miranda* card," indicating that he understood his rights.  *See* Dkt. 6-29 at 44.  According to Detective Anthony Rempel, Fuertes provided a full confession of his involvement in the burglary within twenty minutes of being informed of his rights.  *Id.* at 23.

## II.     Procedural History

### A.     State Court Proceedings

On December 6, 2010, a grand jury indicted Fuertes and his accomplices on two counts of first-degree robbery, one count of second-degree robbery, two counts of first-degree burglary, and one count of fourth-degree conspiracy, in violation of New York Penal Law §§ 160.15(4), 160.10(1), 140.30(4), and 105.10(1).  *See* Dkt. 6-41 at 243-45.[1]

### i.     The 2011 Guilty Plea

On August 5, 2011, Fuertes pled guilty to all charges in the indictment, in exchange for a promised sentence of no more than twelve years' imprisonment.  *See* Dkt. 6-22 at 9.  On December 22, 2011, Fuertes was sentenced, as promised, to a determinate term of twelve years' imprisonment for each of the robbery and burglary convictions, and an indeterminate term of imprisonment of up to four years on the conspiracy conviction, which were all to run concurrently.  The court also ordered that Fuertes serve a five-year term of post-release supervision and imposed $500 in restitution.  *See* Dkt. 6-26 at 5-6.

With the assistance of his first appellate counsel, Fuertes appealed to the Appellate Division, Second Department, arguing, *inter alia*, that his plea was neither knowing nor voluntary because the court failed to advise him that he would be subject

---

[1]      After a jury trial, Yusuf was convicted of first- and second-degree robbery, first-degree burglary, and conspiracy in the fourth degree.  Mohammed pled guilty to one count each of first-degree robbery and first-degree burglary.  Persaud, Chase, and Campbell each pled guilty as charged.  *See* Dkt. 6-43 at 2.

to five years of post-release supervision.  *See* Dkt. 6 at 9-11.  By decision dated April 17, 2013, the Appellate Division held that the Supreme Court's failure to advise Fuertes at the time of his plea that his sentence would include a term of post-release supervision "prevented his plea from being knowing, voluntary, and intelligent." *Fuertes I*, 962 N.Y.S.2d at 916.  Accordingly, the Appellate Division reversed the judgment, vacated Fuertes's plea, and remitted the case for further proceedings.  *Id*.

### ii.    The 2014 Suppression Hearing & Guilty Plea

On remittal, Fuertes moved to challenge the lawfulness of his warrantless arrest and to suppress evidence seized from his apartment and his statements to law enforcement.  *See* Dkt. 6-41 at 195-96.  Over the course of ten days, a *Mapp/Dunaway/Huntley* hearing was held.  *Id.* at 288-99.  Thirteen witnesses -- eleven law enforcement officers, Fuertes, and Gibbons -- testified to the circumstances of the arrest, search, and confession, with Fuertes and Gibbons recounting a different version of events from the one the officers presented.  *Id.*

For example, Officer Morales testified that early in the morning on November 20, 2010, he knocked on Fuertes's apartment door and was greeted by Gibbons, who consented to the Officers' entrance into the apartment.  Officer Morales testified that no physical force was used to gain entry.  *See* Dkt. 6-31 at 59-67.  Gibbons and Fuertes, however, both testified that the Officers forcibly entered the apartment, without permission, and "came in with their guns drawn."  Dkt. 6-35 at 18, 108.

6

Similarly, as to the damp clothing seized from Fuertes's apartment, Officer Morales testified that the clothing was on the floor, in plain-view, and that the items were seized as evidence, without objection, after Fuertes admitted that he had worn them the previous night. *See* Dkt. 6-31 at 14-15. Gibbons and Fuertes, however, both testified that the officers took these items without consent, and Gibbons testified that only one of these articles of clothing was in plain view. *See* Dkt. 6-35 at 22, 49. Gibbons further testified that Officer Morales threatened to arrest her and take away her child if she did not sign a form consenting to a full search of the apartment. *Id.* at 24-26.

Finally, as to the confession, Detective Rempel testified that he read Fuertes his *Miranda* rights at the start of the interview from a card on which he noted that the time was 7:15 a.m. *See* Dkt. 6-29 at 17-18. Detective Rempel testified that Fuertes was cooperative, never asked for an attorney, and never denied involvement in the crime. *Id.* at 19. Fuertes, however, testified that he was not read his *Miranda* rights until the end of the interrogation; that he repeatedly asked for an attorney; and that he refused to answer any questions until he was physically and verbally abused to such an extent that he "gave an oral admission . . . under duress." Dkt. 6-37 at 9-15. Despite Fuertes maintaining that his confession was procured by duress, he nonetheless implicated himself in the burglary at the hearing by admitting on cross-examination that he went "into the house at 54 Woodbury Drive" and that "[e]verything that was written in the statement" he made to Detective Rempel "was true." *Id.* at 16, 22.

7

In a twenty-eight-page decision dated April 24, 2014, the hearing court declined to suppress any of the challenged evidence. *See* Dkt. 6-41 at 288-315. The court concluded that there was probable cause to arrest Fuertes from the statements of his accomplices, which were corroborated by video surveillance footage of the home-invasion. *Id.* at 303-05. Finding the testimony of Fuertes and Gibbons to be "lacking in veracity," *id.* at 306, the court further concluded that (1) the warrantless arrest of Fuertes inside his home was legally proper because consent was "freely and voluntarily given," *id.* at 309; (2) the clothing from Fuertes's apartment "was in plain view" and seized "pursuant to a lawful arrest," *id.* at 311; and (3) Fuertes's confession was legally obtained, *id.* at 314-15.

Soon after, on June 5, 2014, Fuertes moved through counsel to reopen the suppression hearing. *Id.* at 322. Fuertes maintained that his counsel was ineffective for failing to impeach Officer Morales with his grand jury testimony, in which Morales testified that he had obtained Fuertes's Brooklyn address from other law enforcement officers. *Id.* at 321. Fuertes asserted that this grand jury testimony was "tremendous[ly] inconsisten[t]" with Officer Morales's hearing testimony -- that is, that the address was obtained from a hospital employee. *Id.* Noting that Fuertes's claim was not a proper basis for reopening the suppression hearing, but rather was "really a question for appellate review," the court denied the motion. *Id.* at 327. Fuertes then pled guilty to all counts of the indictment, reserving his right to appeal, in exchange for a promised term

of thirteen years' imprisonment, followed by five years' post-release supervision.  *Id.* at

349-50, 357.  On July 15, 2014, the court imposed the promised sentence.  *Id.* at 357-58.

### iii.    Post-Conviction Motions & Appeals

On December 30, 2015, before perfecting his appeal, Fuertes moved *pro se*

to vacate the judgment pursuant to Section 440.10 of New York's Criminal Procedure

Law.  *See* Dkt. 6-41 at 18.  Fuertes claimed, *inter alia*, that he was denied his state and

federal constitutional rights to the effective assistance of counsel because of his

counsel's allegedly deficient performance during the suppression hearing.  *Id.* at 22-23.

The Supreme Court denied this motion on May 10, 2016, concluding that Fuertes's

claims were barred "[p]ursuant to CPL § 440.10(2)" because they "are sufficiently record

based, could have been raised on appeal and yet, [Fuertes] has failed to perfect his

appeal."  Dkt. 6-47 at 5.  Even on the merits, the Supreme Court continued, Fuertes "has

failed to put forth any evidence to show that he was deprived of effective assistance of

counsel," and, in any event, his "plea of guilty resulted in him forfeiting his rights to

appeal based on an ineffective assistance of counsel claim, when the claim does not

involve the plea bargaining process."  *Id*. at 5-6.  Leave to appeal to the Appellate

Division was thereafter denied on October 3, 2016.  *See* Dkt. 6-7 at 1.

On February 21, 2017, Fuertes, through counsel, perfected his appeal to

the Appellate Division.  *See* Dkt. 6-11 at 40.  He argued that the hearing court erred by

(1) crediting the "patently tailored and incredible" testimony of law enforcement

9

witnesses; (2) finding that the police had probable cause to effectuate a warrantless arrest; (3) finding that exigent circumstances warranted entry by the police into Fuertes's apartment; and (4) refusing to reopen the suppression hearing.  Fuertes also argued that his counsel was ineffective for failing to confront Officer Morales with inconsistent grand jury testimony and for failing to object to improper cross-examination of Fuertes.  *Id.* at 3.

By decision dated March 28, 2018, the Appellate Division affirmed Fuertes's conviction, holding that the court (1) properly credited the testimony of police witnesses at the suppression hearing and (2) properly denied Fuertes's motion to reopen the suppression hearing, citing New York Criminal Procedure Law § 710.40(4). *Fuertes II*, 70 N.Y.S.3d at 393.  It also concluded that Fuertes's remaining contentions were "without merit." *Id*.

Leave to appeal to the New York Court of Appeals was denied on June 21, 2018.  *See Fuertes III*, 106 N.E.3d at 759.

B.    **Proceedings Below**

Fuertes filed this Petition on June 5, 2019, raising most of the claims he had presented to the Appellate Division on direct appeal.  *See* Dkt. 1 at 5-11.

10

*DISCUSSION*

I.     *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

Generally, when a habeas petitioner has entered a guilty plea, the petitioner has waived his right to raise most claims based on alleged deprivations of constitutional rights that occurred prior to the plea.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008).  The petitioner

11

may argue, however, that a plea agreement was not knowing and voluntary or that the plea resulted from the ineffective assistance of counsel.  *See Parisi*, 529 F.3d at 138.

## II.    *Analysis*

Fuertes raises four claims in the Petition:  (1) defense counsel provided ineffective assistance at the 2014 suppression hearing; (2) the hearing court improperly refused to reopen the suppression hearing; (3) law enforcement lacked probable cause to effectuate Fuertes's warrantless arrest; and (4) the warrantless arrest in, and search of, Fuertes's apartment were not justified by exigent circumstances or voluntary consent. *See* Dkt. 1 at 5-10.  I address each claim in turn.

### A.    **Ineffective Assistance of Counsel**

Fuertes argues that he was denied the effective assistance of counsel in violation of his state and federal constitutional rights when his counsel failed, at the suppression hearing, to impeach Officer Morales with his inconsistent grand jury testimony and to object to the People's allegedly improper cross-examination of Fuertes. *Id*. at 5.  Because this ineffective assistance of counsel claim concerns the performance of Fuertes's counsel at the suppression hearing, that is, pre-plea proceedings, it cannot serve as a basis for federal habeas relief.  *See Parisi*, 529 F.3d at 138-39 ("An ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns 'the advice [the defendant] received from counsel[.]'" (citation omitted)).

Even on the merits, however, Fuertes's claim for ineffective assistance of counsel fails.  The Appellate Division denied this claim, albeit summarily, as being "without merit."  *Fuertes II*, 70 N.Y.S.3d at 393.  Not only is this determination entitled to "substantial deference," *Fischer*, 780 F.3d at 560, but Fuertes cannot show that it "involved an unreasonable application of[] clearly established Federal law" or "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d).

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner must demonstrate that (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  To satisfy the first prong -- the performance prong -- the record must demonstrate that "'in light of all the circumstances,' the acts or omissions of trial counsel 'were outside the wide range of professionally competent assistance.'"  *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (quoting *Strickland*, 466 U.S. at 690).  "Under the second prong -- the prejudice prong -- a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'"  *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 694).  In the context of a guilty plea, to demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

13

have insisted on going to trial." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996)

(quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

       Fuertes argues that his counsel was ineffective for failing to impeach

Officer Morales with his inconsistent grand jury testimony as to who gave him Fuertes's

address -- either Second Precinct detectives, as Officer Morales testified before the

grand jury, or a hospital employee, as he testified during the suppression hearing. *See*

Dkt. 9 at 8-9.  But, as Fuertes himself recognized in his § 440.10 motion, his defense

counsel "appeared to be th[o]roughly cross examining the prosecution witness[es],"

whose testimony was "riddled with many inconsistencies."  Dkt. 6-41 at 31.  Although

Fuertes's counsel did not impeach Officer Morales with his inconsistent grand jury

testimony, the record demonstrates that he, nonetheless, thoroughly cross-examined

Officer Morales.  For example, Fuertes's counsel impeached Officer Morales's credibility

at the suppression hearing with other inconsistencies, such as statements relating to the

time at which Fuertes was given his *Miranda* warnings, *see* Dkt. 6-32 at 18-19, the time

that Fuertes was arrested, *see* Dkt. 6-31 at 57-59, and whether Officer Morales had seen

children in Fuertes's apartment at the time of the arrest, *id*. at 61-62.  Moreover, Fuertes's

counsel effectively cross-examined other witnesses.  *See, e.g.*, Dkt. 6-29 at 45

(impeaching Detective Rempel's testimony that he read Fuertes his *Miranda* warnings at

7:15 a.m. with the crime report, which indicated that a written statement was received

from Fuertes at 6:15 a.m.); Dkt. 6-30 at 83 (obtaining a concession from Detective

14

McCarthy that although Persaud identified "Nick" as "Jose Fuertes," Persaud's written statement did not include any reference to the latter).  Accordingly, it cannot be said that the failure of Fuertes's counsel to impeach on this minor inconsistency was "outside the wide range of professionally competent assistance."  *Nolan*, 956 F.3d at 79.

Fuertes also argues his counsel was ineffective for failing to object to the People's allegedly improper cross-examination of him.  *See* Dkt. 1 at 5.  But his counsel did in fact object to the cross-examination, particularly when Fuertes was asked, "What did you do when you went into the home at 54 Woodbury Drive?"  Dkt. 6-37 at 16. Therefore, it was reasonable for the Appellate Division to conclude that counsel's actions fell within the range of "competent assistance."  *Nolan*, 956 F.3d at 79.[2]

Even assuming Fuertes's counsel was ineffective for failing to cross-examine and object, Fuertes has not shown that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Coffin*, 76 F.3d at 498.  Fuertes argues that his counsel would have "destroyed" Officer Morales's credibility -- "the crux of the People's case" -- by cross-

---

[2]     Nor would Fuertes's claim of ineffective assistance of counsel prevail under New York law, which requires the defendant to show that "counsel failed to provide meaningful representation," *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citations omitted), but unlike the federal standard, *see Strickland*, 466 U.S. at 694, does not require a showing of prejudice, *id.* at 122-23 (citations omitted). Because "overlooking a useful piece of evidence . . . do[es] not in [itself] render counsel constitutionally ineffective where his or her overall performance is adequate," *People v. Turner*, 840 N.E.2d 123, 126 (N.Y. 2005), and because the state court record shows that Fuertes's counsel did in fact object to the cross-examination, *see* Dkt. 6-37 at 16, Fuertes cannot show that his counsel failed to provide meaningful representation.

examining him about the inconsistent testimony and that his impeachment "would have led to the suppression of all the evidence."  Dkt. 9 at 9.  It is highly unlikely, however, that the suppression court would have ruled differently if Officer Morales had been questioned about his inconsistent grand jury testimony from three years prior.  *See* Dkt. 6-8 at 42-43.  The inconsistency was minor -- likely attributable to the passage of time and the limits of memory -- and, therefore, would not have been dispositive.  Nor does Fuertes demonstrate a "reasonable probability" that he would have insisted on going to trial but for his counsel's failure to object to his cross-examination.  Given that Fuertes pled guilty to the charged crimes once before and that he was already implicated in the crimes by video surveillance footage and statements from his accomplices, Fuertes likely would have pled guilty regardless of these alleged errors by counsel.[3]

Accordingly, even if this claim for ineffective assistance of counsel could serve as basis for habeas relief, it is without merit and must be dismissed.

## B.      Denial of Motion to Reopen the Suppression Hearing

Fuertes argues the state court improperly denied his motion to reopen the suppression hearing based on his discovery of Officer Morales's inconsistent grand jury testimony.  *See* Dkt. 1 at 6.  The Appellate Division rejected this claim on the merits,

---

[3]      Fuertes received an advantageous plea offer.  If convicted of all the charges in the indictment following a trial, Fuertes could have received a prison term of twenty-five years, which could have run consecutively to the six-year sentence he was serving on an unrelated conviction.  *See* Dkt. 6-43 at 3-4. Instead, he received an aggregate term of imprisonment of thirteen years, which ran concurrently with the sentence he was already serving.  *See* Dkt. 6-40 at 5-6.

holding that Fuertes's "motion to reopen the suppression hearing was properly denied" and citing state law only. *Fuertes II*, 70 N.Y.S.3d at 393 (citing two state law cases and N.Y. Crim. Proc. Law § 710.40(4)).   Federal habeas corpus relief, however, "does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation omitted).

Indeed, "[i]t is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing 28 U.S.C. § 2254).  Because a claim premised on a violation of New York Criminal Procedure Law § 710.40(4) does not allege a violation of a federally protected right -- but is clearly a matter of state law -- Fuertes's claim that the state court improperly refused to reopen the suppression hearing does not provide a basis for granting federal habeas relief. *See Tirado v. Walsh*, 168 F. Supp. 2d 162, 170 (S.D.N.Y. 2001) ("[Petitioner's] assertion that the State court improperly reopened the suppression hearing thereby allegedly allowing the prosecution witness to contradict his earlier testimony, was clearly a matter of state law.  It is thus not a claim cognizable on federal habeas review." (citations omitted)).

Even if this claim were cognizable on federal habeas review, Fuertes fails to show that the state court's decision not to reopen the suppression hearing was unreasonable. *See* 28 U.S.C. § 2254(d).  Section 710.40(4) provides that the decision whether to reopen a hearing is a matter of discretion. *See* N.Y. Crim. Proc. L. § 710.40(4)

17

("*If* after a pre-trial determination and denial of the motion *the court is satisfied*, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, *it may permit* him to renew the motion . . . ." (emphasis added)).  Fuertes cannot establish that the denial of his motion to reopen was an abuse of such discretion.

As Fuertes concedes, his trial counsel possessed Officer Morales's grand jury testimony prior to the suppression hearing, *see* Dkt. 9 at 8, and, therefore, could have discovered the inconsistent testimony "with reasonable diligence" before the hearing court had ruled on Fuertes's suppression motions.  This fact alone would support denial of his motion under the discretionary statute.  *See People v. Strong*, 84 N.Y.S.3d 290, 293 (4th Dep't 2018) (concluding that a "motion to reopen the suppression hearing would have failed because the [impeachment evidence] w[as] available at the time of the hearing"); *People v. Musgrove*, 691 N.Y.S.2d 74, 74 (2d Dep't 1999).

The hearing court would have also been justified in denying Fuertes's motion to reopen on the basis that Officer Morales's inconsistent grand jury testimony was not "pertinent" to the suppression issue.  The minor discrepancy between Officer Morales's grand jury testimony and his testimony at the suppression hearing about where he obtained Fuertes's address raised only the issue of Morales's credibility, which, given counsel's impeachment of Morales with other inconsistencies, would not

have materially affected the suppression decision.  *See People v. Xing Chen*, 985 N.Y.S.2d

158, 159 (2d Dep't 2014); *cf. People v. Velez*, 829 N.Y.S.2d 209, 212 (2d Dep't 2007)

(concluding that testimony was "pertinent" because it "went to the heart of the hearing

court's finding of probable cause, and therefore raised more than merely a question of

credibility" (citation omitted)).  Thus, on this record, "the Appellate Division . . . had a

proper basis to affirm the [hearing] court's discretionary ruling as within the statutory

range of its authority."  *People v. Clark*, 670 N.E.2d 980, 982 (N.Y. 1996).

Accordingly, even if this claim were cognizable on federal habeas review,

it is without merit and must be dismissed.

### C.   Fourth Amendment Claims

Fuertes argues that law enforcement violated his Fourth Amendment

rights by (1) arresting him without probable cause and (2) executing a warrantless arrest

in, and search of, his apartment that were not justified by exigent circumstances or

voluntary consent.  *See* Dkt. 1 at 8-10.  The Appellate Division rejected both claims as

being "without merit," *Fuertes II*, 70 N.Y.S.3d at 393, a determination that is entitled to

"substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal

habeas court unless the state court's conclusion was "unreasonable," 28 U.S.C. § 2254(d).

This Court, however, may not even address the merits of these claims, as

federal habeas review of Fourth Amendment claims may only be undertaken in one of

two instances, neither of which Fuertes has shown to be applicable here.  *See Capellan v.*

*Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  "[W]here the State has provided an opportunity for

full and fair litigation of [the] claim, the Constitution does not require that a state

prisoner be granted federal habeas corpus relief on the ground that evidence obtained

in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428

U.S. 465, 482 (1976).  Thus, a petitioner may obtain habeas review of Fourth

Amendment claims only if he establishes either that "'the state has provided no

corrective procedures at all to redress the alleged fourth amendment violations,' or, 'if

the state has provided a corrective mechanism,' that the petitioner 'was precluded from

using that mechanism because of an unconscionable breakdown in the underlying

process.'"  *Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (quoting *Capellan*, 975 F.2d at

70).  To establish "an unconscionable breakdown," a petitioner must prove that "the

state system 'failed to conduct a reasoned method of inquiry into relevant questions of

fact and law,'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 231 (E.D.N.Y. 2014) (citation omitted),

which is a "stringent standard," *McGeachy v. Perez*, No. 11-CV-3906 (DC), 2023 WL

1830802, at *10 (E.D.N.Y. Feb. 7, 2023) (citation omitted).

       Fuertes fails to establish either a lack of a "corrective mechanism" or "an

unconscionable breakdown."  Not only has the Second Circuit long held that New

York's procedure for litigating Fourth Amendment claims is "facially adequate,"

*Capellan*, 975 F.2d at 70 n.1 (internal quotation marks omitted), but Fuertes had the

opportunity to extensively litigate his Fourth Amendment claims.  Fuertes, therefore,

"mere[ly] disagree[s] with the outcome of a state court ruling[, which] is not the
equivalent of an unconscionable breakdown in the state's corrective process." *Id.* at 72.

After listening to ten days of testimony, the hearing court issued a lengthy
written determination explaining its reasoning for denying Fuertes's search and seizure
claims. *See* Dkt. 6-41 at 288-315.  As to Fuertes's warrantless arrest, the hearing court
reasonably concluded that there was probable cause based on the detailed statements
provided by Fuertes's accomplices, which were each corroborated by the others'
statements and by the video surveillance footage, and which noted an additional
accomplice, "Nick," who had yet to be arrested. *See* Dkt. 6-43 at 50.  Given the reliability
of the accomplice statements, it was proper for the officers to rely on Mohammad's
identification of "Nick" in a photo array. *Id.*  Similarly, as to the search and seizure
conducted in Fuertes's apartment, the hearing court, after examining the demeanor and
credibility of all thirteen witnesses, credited the testimony of numerous police witnesses
that Gibbons consented to the entry and rejected the testimony of Fuertes and Gibbons
to the contrary, finding "them lacking in veracity." *Id.* at 52; *see also Tirado*, 168 F. Supp.
2d at 170 ("It is not within the purview of a federal court on habeas review to reassess
and pass judgment upon the credibility of a witness whose testimony and demeanor it
has not observed.").  Fuertes then appealed the denial of his suppression motions to the
Appellate Division, which also rejected his Fourth Amendment claims on the merits.
*See Fuertes II*, 70 N.Y.S.3d at 393.  Although the New York Court of Appeals declined

21

leave to appeal, Fuertes sought the opportunity to present his claims to the highest state court.  *See Fuertes III*, 106 N.E.3d at 759; Dkt. 6-17 at 1-2.

Accordingly, because Fuertes was afforded the opportunity to litigate his Fourth Amendment claims, and because his claims were resolved by "reasoned method[s] of inquiry" within the state system, Fuertes is not entitled to habeas review.

## CONCLUSION

Fuertes has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of appealability because Fuertes has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.  The Clerk shall also mail copies of this memorandum decision and the judgment to Fuertes at his last known address.

SO ORDERED.

Dated:     New York, New York
           July 10, 2023

                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting By Designation

22